Naomi Glushakow **DENENBERG**
v.
**The EMPLOYERS' LIABILITY ASSUR-
ANCE CORPORATION, Limited.**
Civ. A. No. 32442.

United States District Court
E. D. Pennsylvania.
Aug. 22, 1963.

Edwin J. McDermott, Philadelphia, Pa., for plaintiff.

John J. McDevitt, III, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This case comes before the court on plaintiff's *motion under Rule 12(f) of* the Federal Rules of Civil Procedure to strike as insufficient the second, third and fourth defenses raised by defendant's Answer (Document 6).

The facts are these: Plaintiff is a citizen of New Jersey. On or about February 15, 1955, she was a civilian employee of the United States Naval Exchange in London, England, and she fell and sustained certain injuries in the Navy Exchange Building, allegedly in the course of her employment. At the time, the Exchange had an employer's liability policy with the defendant, Employers' Liability Assurance Corporation, a Pennsylvania corporation. The Ex-

change carried this policy pursuant to Public Law 397 of the 82nd Congress, being the Act of June 19, 1952 (1952 U.S.Code Cong. & Adm.News, p. 141), 66 Stat. 138, which defined the Exchange and similar activities as "non-appropriated fund instrumentalities" and provided that their civilian employees were not to be considered employees of the United States for the purposes of laws administered by the Civil Service Commission or the provisions of the Federal Employees' Compensation Act. Instead, these instrumentalities were to "provide their civilian employees, by insurance or otherwise, with compensation for death or disability incurred in the course of employment. * * * In the case of employees employed outside the continental limits of the United States and in Alaska, compensation shall be not less than that provided in sections 7, 8 and 9 of the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1427–1430), as amended * * *." 1952 U.S.Code Cong. & Adm.News, pp. 141–142.

Plaintiff sought redress by means of a suit against the United States. In that action, the Court of Claims held that she failed to state a claim upon which the court could properly grant relief and that 5 U.S.C.A. §§ 150k and 150k–1 precluded liability of the United States to civilian employees of the Exchange. Denenberg v. United States, 305 F.2d 378 (Ct.Cl. 1962).

Plaintiff now brings suit in this court against the insurer and, as its second, third and fourth defenses, respectively, the insurer pleads (Document 6) that the action is barred by a six-year statute of limitations, that plaintiff fails to state a claim upon which relief may be granted, and that plaintiff's exclusive remedy exists under the Longshoremen's and Harbor Workers' Compensation Act. Plaintiff moves the court to strike these defenses as insufficient under Rule 12(f).

"A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." 2 Moore, Federal Practice, par. 12.21, citing Milkman v. Aetna Life Ins. Co., 36 F.Supp. 116 (E.D.N.Y. 1941); Burke v. Mesta Mach. Co., 5 F.R.D. 134 (W.D.Pa.1946); Klages v. Cohen, 7 F.R.D. 216 (E.D.N.Y.1947).

The defenses raised in the Answer are not, prima facie, frivolous. They may or may not have merit, but, at this point, it is enough to say that they are not so clearly insufficient that justice would be done by striking them in order to prune the pleadings. The statute of limitations defense is not so transparently devoid of merit as to bring it within the contemplation of Rule 12(f). The fourth defense, that plaintiff's exclusive remedy exists under the Longshoremen's and Harbor Workers' Compensation Act, raises problems the answers to which lie in analyzing a complex legislative scheme and history. The third defense, that plaintiff has failed to state a claim upon which relief may be granted, likewise may have merit. A question of jurisdiction is raised by these last two defenses in that this court apparently has no jurisdiction over this suit until plaintiff has sought a determination from a deputy commissioner appointed under the Longshoremen's and Harbor Workers' Compensation Act by the Secretary of Labor [1] (33 U.S.C.A. §§ 939 and 940). This court has been instructed to determine jurisdictional questions as early as possible in the litigation. See Berkowitz v. Philadelphia Chewing Gum Corporation, 303 F.2d 585 (3rd Cir. 1962).

The record fails to disclose that plaintiff has made any attempt to pursue her remedy through administrative channels. It appears from P.L. 397, 82nd Cong., supra, that an administrative determination of the amount payable to plaintiff, if any, was contemplated. Section 2 provides:

"In the case of employees employed outside the continental limits of the

1. 33 U.S.C.A. § 902(6).

United States and in Alaska, compensation shall be not less than that provided in sections 7, 8, and 9 of the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1427–1430), as amended, * *."

The legislative history of the 1958 amendment to the above-mentioned P.L. 397 indicates that Congress intended the remedy in the first instance to be administrative, not judicial. The Committee on Post Office and Civil Service reported on H.R. 10504 as follows (House Report 1659, 85th Cong., 2nd Sess.):

" * * * Public Law 397 * * provides that civilian employees of such nonappropriated fund instrumentalities 'shall not be held and considered as employees of the United States for the purpose of * * the Federal Employees' Compensation Act' (5 U.S.C. 751 et seq.). *Ordinarily, employees not subject to the Federal Employees' Compensation Act may have their compensation claims determined by the compensation commissions of the several States, and such procedure for determination of the compensation claims of employees of Armed Forces nonappropriated fund instrumentalities was contemplated when Public Law 397 was enacted.* The compensation commissions of the various States have declined jurisdiction of the claims for compensation for death or disability of these nonappropriated fund instrumentality personnel because—notwithstanding the provision in Public Law 397 that they are not employees of the United States for the purpose

of the Federal Employees' Compensation Act—they nevertheless are employed by instrumentalities of the Federal Government.

"Thus, an inequitable situation has arisen wherein these employees (and their survivors, in cases of death) find themselves without the contemplated means for independent final adjudication of their compensation claims. Under such circumstances, therefore, the full intent of the Congress as embodied in Public Law 397 has not been carried out, to the extent that certain claimants have been left more or less at the mercy of negotiating with adverse parties for settlement of their claims.

"H. R. 10504 will correct this situation by providing for final adjudication of these claims by judicial tribunals established by the Secretary of Labor pursuant to the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. 901–950)." (Emphasis supplied.)

Since Congress could not have anticipated that an employee located in London, England, would have secured an administrative determination from a State compensation commission, it would seem that they anticipated such an employee would secure his administrative decision from the comparable Federal agency, namely, the deputy commissioner specified in the Longshoremen's and Harbor Workers' Compensation Act, which was specifically mentioned in the 1952 Act as noted above.[2]

The Longshoremen's and Harbor Workers' Compensation Act, §§ 7, 8 and

2. In 1952, the regulations made clear that the deputy commissioner at New York City would be the appropriate administrative official to hear plaintiff's claim, since 20 C.F.R. 51.2 contained this language:

"51.2 *Establishment of compensation districts.* (a) Pursuant to the provisions of section 39(b) of the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1442; 33 U.S.C. 939(b) and section 3(a) of said act

of August 16, 1941 (55 Stat. 622; 42 U.S.C. 1651), as amended, the Bureau hereby establishes the following compensation districts * * *:

* * *

"(3) *Foreign District.* This district comprises the areas outside continental United States not included in any compensation district established in this section, with headquarters at New York, N. Y."

**464**

9, now codified as 33 U.S.C.A. §§ 907, 908, and 909, provide:

"**§ 907. Medical services and supplies**

"(a) The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus for such period as the nature of the injury or the process of recovery may require. If the employer fails to provide the same, after request by the injured employee, such injured employee may do so at the expense of the employer. The employee shall not be entitled to recover any amount expended by him for such treatment or services unless he shall have requested the employer to furnish the same and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide the same; nor shall any claim for medical or surgical treatment be valid and enforceable, as against such employer, unless within twenty days following the first treatment the physician giving such treatment furnish to the employer and the deputy commissioner a report of such injury and treatment, on a form prescribed by the Secretary. The deputy commissioner may, however, excuse the failure to furnish such report within twenty days when he finds it to be in the interest of justice to do so, and he may, upon application by a party in interest, make an award for the reasonable value of such medical or surgical treatment so obtained by the employee. If at any time during such period the employee unreasonably refuses to submit to medical or surgical treatment, the deputy commissioner may, by order, suspend the payment of further compensation during such time as such refusal continues, and no compensation shall be paid at any time during the period of such suspension, unless the circumstances justified the refusal.

"(b) Whenever in the opinion of the deputy commissioner a physician has not impartially estimated the degree of permanent disability or the extent of temporary disability of any injured employee, the deputy commissioner shall have the power to cause such employee to be examined by a physician selected by the deputy commissioner and to obtain from such physician a report containing his estimate of such disabilities. If the report of such physician shows that the estimate of the physician has not been impartial from the standpoint of such employee, the deputy commissioner shall have the power in his discretion to charge the cost of such examination to the employer, if he is a self-insurer, or to the insurance company which is carrying the risk."

"908. Compensation for disability

"Compensation for disability shall be paid to the employee as follows:

\*　\*　\*　\*　\*　\*

"(c) Permanent partial disability: In case of disability partial in character but permanent in quality the compensation shall be 66⅔ per centum of the average weekly wages, which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with subdivision (b) or subdivision (e) of this section, respectively, and shall be paid to the employee, as follows:

\*　\*　\*　\*　\*　\*

"(21) Other cases: In all other cases in this class of disability the compensation shall be 66⅔ per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to re-

consideration of the degree of such impairment by the deputy commissioner on his own motion or upon application of any party in interest.

\* \* \* \* \* \*

"(h) The wage-earning capacity of an injured employee in cases of partial disability under subdivision (c) (21) of this section or under subdivision (e) of this section shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity: *Provided, however,* That if the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the deputy commissioner may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future."

(Section 909 deals with the standards by which the deputy commissioner is to award compensation for death.)

 It is clear that the deputy commissioner is to determine matters such as the "wage-earning capacity" of the plaintiff, particularly in a case such as this where it is contended that actual earnings do not represent wage-earning capacity.

 An examination of the contract entered into between defendant and plaintiff's employer for the benefit of the Exchange employees indicates that defendant bargained to pay amounts as determined by the deputy commissioner, while plaintiff asks for a determination by the court. Plaintiff must first refer any claim to the appropriate administrative body according to these provisions of the policy:

"The Employers' Liability Assurance Corporation, Limited, does hereby agree \* \* \*

"One (a) To Pay Promptly to any person entitled thereto under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all instalments thereof as they become due,

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this Employer under such of certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this Policy, each of which statutes is herein referred to as the Workmen's Compensation Law, and

"(2) For the benefit of such person the proper cost of whatever medical, surgical, nurse or hospital services, medical or surgical apparatus or appliances and medicines, or, in the event of fatal injury, whatever funeral expenses are required by the provisions of such Workmen's Compensation Law.

"It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this Policy, while this Policy shall remain in force. Nothing herein contained shall operate to so extend this Policy as to include within its terms any Workmen's Compensation Law, scheme or plan not cited in an endorsement hereto attached."

An Endorsement to the policy headed "WORKMEN'S COMPENSATION EN-

DORSEMENT UNDER THE ACT OF AUGUST 16, 1941" (G7296-2, Federal Defense Bases Compensation Endorsement, effective 6/26/54) provides:

"The obligations of paragraph One (a) of the policy include the Longshoremen's and Harbor Workers' Compensation Act, being Public Law No. 803 of the 69th Congress, approved March 4, 1927, as extended by the provisions of the Act of Congress providing compensation for disability or death resulting from injury to persons employed at military, air, and naval bases and at certain other places, being Public Law No. 208 of the 77th Congress, approved August 16, 1941, and all laws amendatory thereof or supplementary thereto which may be or become effective while this Policy is in force.

"The Company will carry out the provisions of Section 35 of said Act. * * *3

* * *

"Reference to the law of any State in Conditions B and D of this Policy are hereby declared to include for the purpose of this endorsement only, the provisions of the Longshoremen's and Harbor Workers' Compensation Act and the said Act of Congress approved August 16, 1941 (Public Law No. 208, 77th Congress), as amended."

Endorsement #2 (page 1) of the policy contains this language:

"It is agreed that such insurance as is afforded by this Policy, under Paragraph One (b) shall apply as respects civilian employees of this employer, located at installations anywhere in the world which may come under the cognizance of the U. S. Navy Ship's Store Office, subject to the following provisions:

* * *

"2. If employees sustain personal injury, including death, at any time resulting therefrom, and such injuries or death arise out of and in the course of said employee's employment by this employer, the company will pay, voluntarily an amount equivalent to that afforded for compensation, medical, and other benefits provided by the Longshoremen's and Harborworkers' Compensation Act and U.S.Code (1946) Title 33-Section 901-49; * * *

* * *

"4. Such payments shall be made only if the circumstances under which the injury or death were sustained were such that payments, either by this employer or any company as his insurer, would have been required, if the employee or the person claiming by, through, or under him, had a legal claim under the Longshoremen's and Harborworkers' Compensation Act; * * *.

Condition D of the policy contains this language:

"D. * * * If the law of any state in which the Policy is applicable provides for the enforcement of the rights of such employees or such dependents by any Commission, Board or other state agency for the benefit of such employees or such dependents, then the provisions of such law are made a part thereof, as respects any matter subject thereto, as fully as if written herein."

The policy and the statute indicate that exhaustion of administrative remedies is a condition precedent to recovery upon the policy. In order to give plaintiff a reasonable time within which to institute an appropriate proceeding under the Longshoremen's and Harbor Workers' Compensation Act, supra, this action will be stayed pending the outcome of such proceeding, and it is un-

---

3. 33 U.S.C.A. § 935, providing that jurisdiction of the employer by a deputy commissioner is jurisdiction of a carrier, such as defendant, and that any requirement by a deputy commissioner shall be binding upon such carrier, etc.

necessary to consider at this time the other defenses[4] challenged by the above Motion. See Somma v. United States, 283 F.2d 149, 151–2 (3rd Cir.1960).

### ORDER

And now, August 22, 1963, it is ordered that this action is stayed in order to permit plaintiff a reasonable time within which to proceed under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 ff., in accordance with the foregoing Memorandum Opinion.

---

4. Apparently, these defenses should be raised before the deputy commissioner, prior to being presented to this court.